**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEPHEN PENNYMAN, | ) | 3:25-CV-00040 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JENNIFER DESENA, MICAH MANN, | ) | |
| FRANK SPINELLI, LEIGH'ANN | ) | March 31, 2026 |
| CARUSO, GIOVANNA HARRIS, | | |
| *Defendants*. | | |

## ORDER GRANTING IN PART MOTION TO DISMISS, DENYING MOTION FOR PRELIMINARY INJUNCTION, AND DENYING MOTION FOR LEAVE TO AMEND

Sarala V. Nagala, United States District Judge.

Plaintiff Stephen Pennyman alleges that Defendants, parole officers Jennifer Desena, Leigh'ann Caruso, Micah Mann, and Frank Spinelli, and parole supervisor Giovanna Harris, violated his constitutional rights in relation to a search of his residence and subsequent criminal and parole violation proceedings. Compl., ECF No. 1.

There are three pending motions before the Court: Defendants' motion to dismiss, ECF No. 44; Plaintiff's motion for a preliminary injunction, ECF No. 74; and Plaintiff's motion for leave to amend the complaint, ECF No. 79. For the reasons described below, the Court finds that dismissal of the original complaint is warranted, except with respect to one of Plaintiff's Fourteenth Amendment due process claims, and that Plaintiff's proposed amendments would be futile. Accordingly, Defendants' motion to dismiss is GRANTED in part, Plaintiff's motion for a preliminary injunction is DENIED, and Plaintiff's motion for leave to amend is DENIED. The case will proceed as to the remaining Fourteenth Amendment due process claim in the original complaint.

## I.     BACKGROUND

### A.  Factual Background

The facts alleged in Plaintiff's complaint are taken as true for purposes of resolving Defendant's motions to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At the relevant times, Plaintiff was supervised by the State of Connecticut's Department of Pardons and Parole as a special parolee, following his release from custody on July 18, 2023.  ECF No. 1 ¶ 1.  Plaintiff's special parole supervision was scheduled to end on July 18, 2027.  *Id.*

On November 2, 2023, four Connecticut parole officers—Defendants Caruso, Desena, Mann, and Spinelli—arrived at Plaintiff's residence after receiving a tip from the Meriden Police Department that Plaintiff had attempted to purchase a firearm.  *Id.* ¶¶ 14–15, 38–41.  Plaintiff was supervised by Defendant Caruso at the time.  *Id.* ¶ 128.  Plaintiff asserts that according to police reports,[1] the Meriden police were contacted by an anonymous woman on November 1, 2023.  *Id.* ¶ 65.  The woman reported that she heard from a friend named David that Plaintiff asked David where he could purchase a "burner gun."  *Id.*  Plaintiff further alleges that police reports reflect that the caller was "rambling, slurring her words, and sounded as if she was intoxicated"—but also that police contacted the caller's friend David, who corroborated the caller's report.  *Id.*  Plaintiff asserts that Defendants then fabricated a reason to enter and search his home:  specifically, that Defendants intentionally and wrongly interpreted the caller's report that Plaintiff asked "where he could purchase a firearm" to mean that Plaintiff was actually in possession of a firearm.  *See, e.g., id.* ¶ 96–98.

When the defendant parole officers arrived at Plaintiff's residence on November 2, Defendant Caruso placed Plaintiff in handcuffs, and Defendants Caruso and Desena questioned

---

[1] Plaintiff references the underlying reports, but does not attach them to his complaint.

Plaintiff about the location of a firearm. *Id.* ¶ 15. Plaintiff stated there was no firearm in the house, but, according to Plaintiff, Defendants told him to "stop lying" and to "just tell [them] where the gun . . . is." *Id.* ¶ 16. The four parole officers proceeded to search Plaintiff's person and the home, and did not locate a firearm. *Id.* ¶¶ 17–21.

Five officers of the Meriden Police Department then proceeded to enter the home, and Detective Lieutenant Philips questioned Plaintiff about the location of a firearm. *Id.* ¶¶ 22–23. Defendants Caruso and Desena entered the garage of the residence and asked Plaintiff whether the car parked in the garage belonged to him; Plaintiff informed them that the car was neither his nor his sponsor's and that Plaintiff "does not touch the areas in the garage." *Id.* ¶¶ 25–27. Defendants Caruso and Desena then searched the car, "finding a small package of pills," and "[told] Meriden police to arrest [P]laintiff." *Id.* ¶ 28.

After the police officers arrested Plaintiff, Defendant Caruso asked Detective Lieutenant Philips whether he wanted to "take over the search," to which Philips replied that the Meriden police "[could] not touch anything [and] they would need a search warrant." *Id.* ¶ 30. Defendant Caruso then asked Philips whether he wanted the parole officers "to continue to search," and Philips said "yes." *Id.* ¶ 31. The parole officers then continued their search of the garage and home, including taking apart the "central air system," upon which they located "more drugs." *Id.* ¶¶ 33, 35–36. While Defendant Harris, a parole supervisor, was not present at the time of the search, Plaintiff asserts she knew of and condoned the actions of her subordinate parole officers. *Id.* ¶¶ 51–52; 99–105.

Plaintiff was charged with possession with intent to sell narcotics.[2]  *Id.* ¶ 57.  Plaintiff moved to suppress the drugs found during the search of his home.  *Id.* ¶ 128.  Defendant Caruso was removed as his supervising parole officer "due to [a] conflict of interest," because she was "a witness for the state's prosecutor in [the] criminal case."  *Id.* ¶ 129.

After a parole revocation hearing, Plaintiff received a sentence of approximately six months and ten days for violating the conditions of his special parole.  *Id.* ¶¶ 58, 161 (six months and ten days); 79, 119 (six months and fourteen days).  Defendant Caruso was reassigned to serve as Plaintiff's parole officer after this incident.  *Id.* ¶ 163.  Since then, Defendant Caruso has unlawfully placed him on GPS monitoring, in addition to his other conditions of special parole.  *See, e.g.*, *id.* ¶¶ 121–125, 164–65.

B.  The Present Action

Plaintiff's complaint invokes 42 U.S.C. § 1983 and explicitly alleges claims for cruel and unusual punishment, in violation of the Eighth Amendment; unconstitutional conditions of confinement, in violation of the Eighth Amendment; deliberate indifference to Plaintiff's safety, under the Eighth Amendment; and a Fourteenth Amendment equal protection class of one claim.  *Id.* at 1–2, ¶¶ 141–148.  In addition, because Plaintiff is proceeding *pro se*, the Court construes Plaintiff's complaint as raising a claim of an unlawful search, in violation of the Fourth Amendment, and a claim of violation of his Fourteenth Amendment procedural due process rights, in connection with the imposition of a GPS monitoring condition of special parole he alleges was

---

[2] The Court may take judicial notice of Plaintiff's criminal case, which resulted in a guilty verdict and the imposition of a two-year jail sentence.  *See* Conn. Judicial Branch, Dkt No. N07M-CR23-0354983-S jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=729d2193-a237-4b29-b804-7e28eba6a2d3 (last visited March 30, 2026).  Plaintiff's maximum release date is December 7, 2026, and his special parole end date is July 17, 2027.  *See* Conn. Dept. of Correction, Inmate Information, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=342674 (last visited March 30, 2026).

4

not properly imposed.  As relief, Plaintiff seeks compensatory damages and injunctive relief in the form of removal from special parole.  *Id.* ¶¶ 141–148, 171.

There are three pending motions in this case.  First, while Plaintiff's criminal case was pending, Defendants moved to dismiss the complaint on the grounds that the Court should abstain from resolving this action under *Younger v. Harris*, 401 U.S. 37 (1971), and that Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  ECF No. 44-1 at 6–10.  Defendants further argue that dismissal is warranted as to all Defendants because the complaint failed to state a claim for relief, and as to Defendant Harris specifically because Plaintiff failed to allege Harris's personal involvement in the challenged conduct.  *Id.* at 10–15.  Plaintiff opposes the motion to dismiss.  ECF No. 46.

Second, while the motion to dismiss was pending, Plaintiff filed a motion for a preliminary injunction, in which he requests that he be released from incarceration into a period of transitional supervision that would allow him to live at home.  Mot. for Prelim. Inj., ECF No. 74 ¶ 132.[3]  He asserts that Defendants have retaliated against him by placing him on a GPS monitoring device, incorrectly categorizing his parole, and denying transitional supervision.  *Id.* ¶ 106.

---

[3] In his original complaint, Plaintiff requested monetary damages, injunctive relief, and unspecified declaratory relief. ECF No. 1 at 1; *id.* ¶¶ 141–173. Before the complaint was served upon Defendants, Plaintiff filed two motions for preliminary injunctive relief, *see* ECF No. 12, ECF No. 15, which the Court construed as motions for *ex parte* temporary restraining orders ("TROs").  *See* Order, ECF No. 21.  The Court denied both motions to the extent they requested *ex parte* relief, finding that Plaintiff failed to demonstrate that his case fell into the narrow set of situations warranting injunctive relief in the absence of the opposing party's notice or opportunity to be heard. *Id.*  After service, the Court denied both motions in full, finding that injunctive relief would interfere with ongoing state court proceedings such that abstention was warranted under *Younger*. *See* Order, ECF No. 48.  Plaintiff has since filed two additional motions for injunctive relief relating to jail credit, risk reduction earned credit, and "transitional supervision" placement.  *See* ECF No. 53; ECF No. 74.  The Court denied Plaintiff's motion for a TRO at ECF No. 53 on the grounds that it was partially moot and did not meet the requirements for issuance of a TRO.  Plaintiff's motion for a preliminary injunction, ECF No. 74, remains outstanding.

Finally, nearly seven months after the motion to dismiss briefing was complete, Plaintiff filed a motion for leave to amend his complaint. [4]  Mot. to Amend, ECF No. 79.  Plaintiff's proposed amended complaint again asserts an Eighth Amendment violation relating to the conditions of his confinement, and now explicitly asserts Fourth Amendment and Fourteenth Amendment due process violations.  ECF No. 79 at 9–10.  He further seeks to add claims for false arrest, "emotional distress," and "supervisory liability."  *Id.* at 9–11.  The proposed amended complaint names the same five Defendants and asserts substantially similar operative facts to those in the original complaint, without numbered paragraphs.  Defendants oppose this motion, asserting that amendment would be futile, that Plaintiff exhibited undue delay in requesting leave to amend, and that granting such leave would result in undue prejudice.  Opp. to Mot. to Amend, ECF No. 81.

## II.    MOTION TO DISMISS

First, the Court grants Defendants' motion to dismiss the original complaint, except with respect to Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Caruso related to the imposition of a GPS monitoring condition.

### A.  Legal Standard

A party may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Subject matter jurisdiction can never be forfeited or waived; thus, the Court has an independent obligation to satisfy itself of its jurisdiction.  *Stafford v. Int'l*

---

[4] This is Plaintiff's second motion to amend the complaint.  Defendants Desena, Caruso, and Harris were misnamed in the original complaint, and the Court permitted Plaintiff to amend the complaint to properly identify them.  *See* ECF No. 31 (order granting in part Plaintiff's first motion to amend), ECF Nos. 40, 41, 42 (executed waivers of service as to these Defendants).  While the Court directed the Clerk to update the case caption with the correct names and titles for these Defendants, the original complaint, filed at ECF No. 1, remains operative.

*Bus. Machines Corp.*, 78 F.4th 62, 68 (2d Cir. 2023) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) and *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92 (2d Cir. 2019)).

Additionally, to avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

However, the Court is "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief will is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic

pleading standards outlined above to survive a motion to dismiss.  *Id.* at 387 (citing *Twombly*, 550 U.S. at 570).

B. Discussion

1. *Initial Matters*

The complaint explicitly raises claims under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  Applying the "special solicitude" typically afforded to pro se litigants, the Court finds that the complaint also impliedly raises claims under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.  *See id.*

Separately, Plaintiff has repeatedly requested injunctive relief in connection with his claims.  However, the Court has denied each request thus far.  To the extent Plaintiff requests injunctive relief in the form of removal from special parole in his complaint, such relief is barred, as "[r]elease from penal custody is not an available remedy under [§ 1983]."  *Preiser v. Rodriguez*, 411 U.S. 475, 479 (1973) (citation omitted).  Accordingly, the Court construes the complaint as raising only claims for damages under § 1983.

2. Younger *Abstention*

The *Younger* abstention doctrine, while relevant at the time Defendants filed their motion to dismiss, is now inapplicable because Plaintiff's state criminal proceedings have concluded. Under *Younger*, district courts may abstain from adjudicating, among other cases, federal civil cases that request to enjoin ongoing state criminal prosecutions.  *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  Such abstention "prevent[s] erosion of the role of the jury and avoid[s] a duplication of legal proceedings and legal sanctions," and is "'reinforced' by the notion of 'comity,' that is, a proper respect for state functions."  *Id.* (quoting *Younger*, 401 U.S. at 44).

To the Court's knowledge, there are no pending criminal proceedings against Plaintiff at this time. As *Younger* is inapplicable where state proceedings are no longer ongoing, it does not serve as grounds for abstention. *See Silva v. Farrish*, 47 F.4th 78, 89 (2d Cir. 2022).

### 3. Fourth Amendment Claim

The Court has construed Plaintiff's complaint as raising a Fourth Amendment claim under § 1983, based on his allegations that Defendants illegally searched his residence. But Plaintiff's allegations fail to state a claim upon which relief may be granted because he does not state a claim under the Fourth Amendment and because any claim for damages would be barred by *Heck*.

"When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. This bar exists because "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of [section] 1983." *Preiser*, 411 U.S. at 490; *Poventud v. City of New York*, 750 F.3d 121, 128 (2d Cir. 2014) ("[T]he Supreme Court, in *Preiser* . . . and *Heck* . . . has effectively subordinated the § 1983 remedy to the writ of *habeas corpus* when the remedies would overlap (and to some extent, even when they do not).") (citation omitted).

A suit for damages for an unreasonable search may proceed, in certain rare cases, "even if the challenged search produced evidence introduced at trial that resulted in a plaintiff's conviction." *Pizarro v. United States*, No. 22-CV-2125 (LTS), 2022 WL 1751167, at *7 (S.D.N.Y. May 31, 2022). For instance, a successful § 1983 action does not "*necessarily* imply that the plaintiff's conviction was unlawful" where a plaintiff (1) establishes that the independent source, inevitable discovery, or harmless error doctrines apply, (2) proves "that the search was unlawful,"

and (3) proves that the search caused him "actual, compensable injury," which "does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck*, 512 U.S. 487 n.7; *see also Pizarro*, 2022 WL 1751167, at *7.

The allegations construed by the Court to raise a Fourth Amendment claim revolve around an unconstitutional search of Plaintiff's home, which led to the discovery of the narcotics that precipitated his parole violation and criminal proceedings. Plaintiff alleges that the search he challenges produced evidence that resulted in his narcotics charges, of which he was ultimately convicted on May 12, 2025, and sentenced to two years' incarceration for on July 22, 2025. *See* ECF No. 1 ¶ 90; *see* Ct. Super. Ct. Dkt No. N07M-CR23-0354983-S (identifying offense date as November 2, 2023). Plaintiff appears to challenge the search on the grounds that parole officers conducted an unlawful search of his residence primarily because they acted on a faulty tip. The Court need not determine whether Plaintiff has plausibly pled that the search violated the Fourth Amendment, however.[5] Even if the search *was* unlawful, Plaintiff has not pleaded facts indicating that any of the alternate-discovery or harmless error doctrines apply, as would be required to raise an inference that this lawsuit, if successful, would not necessarily imply the invalidity of his conviction. *See Pizarro*, 2022 WL 1751167, at *7 (S.D.N.Y. May 31, 2022) ("[E]ven if he could

---

[5] The Court notes that it is unlikely Defendants conducted an unlawful search. Plaintiff is a parolee, and the search of his residence was justified based on the special needs of monitoring parolees. *See United States v. Braggs*, 5 F.4th 183, 188 (2d Cir. 2021) ("[A] search undertaken by a parole officer of a parolee to detect parole violations is reasonably related to the parole officer's duties . . . and accordingly comports with the Fourth Amendment.") (internal citations omitted); *see also Leniart v. Bundy*, No. 3:09-CV-9 (HBF), 2017 WL 1020971, at *7 (D. Conn. Mar. 16, 2017), *aff'd sub nom. Leniart v. Ellison*, 761 F. App'x 47 (2d Cir. 2019). Even accepting as true Plaintiff's allegation that Defendants mischaracterized the anonymous tip as suggesting Plaintiff was in possession of a firearm, this would not undermine that the search was reasonably related to Defendants' duties, as parole officers, to detect parole violations. And Plaintiff's allegations that the Defendant parole officers coordinated with Meriden police during their search of Plaintiff's residence do not render the search unlawful. *Black v. Petitinato*, 761 F. App'x 18, 21–22 (2d Cir. 2019) (summary order) ("We have held that police officers may coordinate with parole officers to conduct a search of a parolee's home. Police officers are permitted to participate in probation-related searches as a 'coordinated effort' between agencies where 'the probation officers are pursuing legitimate probation-related objectives.'") (quoting *United States v. Reyes*, 283 F.3d 446, 464 (2d Cir. 2002)).

show that the . . . agents violated the Fourth Amendment during the arrest and search, if the evidence recovered during the search was used at trial and could not otherwise have been discovered, his claims are barred under *Heck*."); *see also Knight v. Cerejo*, No. 3:13-CV-1882 (JAM), 2015 WL 893421, at *5 (D. Conn. Mar. 2, 2015) (finding Fourth Amendment claim barred by *Heck* where the conviction and sentence were based entirely on drugs found during the allegedly illegal search). And there is no indication in Plaintiff's pleading or on the docket in his criminal matter that this conviction has been invalidated, as would be required to avoid application of *Heck*.[6]

Nor has Plaintiff plausibly asserted injury beyond the fact of his prosecution, conviction and sentence. In large part, Plaintiff asserts his mental and physical health have suffered as a result of his incarceration following the allegedly improper search. But under *Heck*, these harms are not compensable injuries. *See* 512 U.S. 487 n.7. Any suggestion that the search *itself* caused him harm is too vague to support a claim of injury beyond the criminal consequences of the items found during the search. *Cf. Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.").

Thus, Plaintiff's Fourth Amendment claim is barred under the *Heck* doctrine. And to the extent Plaintiff suggests his Fourth Amendment claim implicates his parole revocation proceedings in addition to his criminal proceedings, it is barred for that purpose, too. "The principle in *Heck* applies with equal force to a revocation of parole or probation." *Llewellyn v. Gasparino*, No. 3:19-CV-489 (KAD), 2019 WL 2248689, at *3 (D. Conn. May 24, 2019) (collecting cases).

---

[6] *See* Conn. Judicial Branch, Dkt No. N07M-CR23-0354983-S.

11

4. *Eighth Amendment Claims*

Plaintiff explicitly asserts that Defendants were deliberately indifferent to his safety based on his conditions of confinement, and thus violated his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. ECF No. 1 ¶¶ 74, 141–43, 145–46, 148. But the complaint fails to state such a claim for relief.[7]

The Eighth Amendment mandates that the conditions of prison confinement must be, at a minimum, "humane." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Prison officials must also "take reasonable measures to guarantee the safety of the inmates." *Id.* In order to establish a violation of his Eighth Amendment rights, "an inmate must show (1) a deprivation that is 'objectively, sufficiently serious' [such] that he was denied 'the minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer,* 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). As with other violations asserted under § 1983, a plaintiff must plead "an individual defendant's personal involvement in the alleged wrong." *Id.* (citing *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986)).

Plaintiff has not met either of the elements required to state a claim under the Eighth Amendment.[8] Plaintiff's complaint asserts that all Defendants are liable for "deliberate

---

[7] The Court notes that Defendants have failed to analyze *why* they believe Plaintiff's complaint fails to state an Eighth Amendment claim or a Fourteenth Amendment class of one claim. Instead, they merely provide the legal standards for such claim. *See* ECF No. 44-1 at 12–15. Nonetheless, because Plaintiff fails to plausibly allege these claims (or a Fourteenth Amendment claim, to the extent he was a pretrial detainee at the relevant time), they are subject to dismissal.

[8] To the extent Plaintiff's challenge relates to pretrial confinement, rather than incarceration as punishment for a parole violation, such a claim would be evaluated under the Fourteenth Amendment's Due Process Clause. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). In any event, "under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," and that the defendant imposed such conditions intentionally or recklessly, and Plaintiff has not done so here. *Id.* at 30, 35 (citation omitted).

indifference to [his] safety and conditions of confinement," in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 1 at 1–2, ¶¶ 74, 141–43, 145–46, 148. But Plaintiff has not provided any details regarding the conditions of his incarceration, and has not alleged that he was deprived of any of "life's necessities."

Nor has he alleged facts sufficient to connect the named Defendants—parole officers and a parole supervisor—to any of the conditions of his confinement. Proper Eighth Amendment defendants are those with personal involvement in an objectively serious deprivation, such as prison officials. *See, e.g.*, *Gaston*, 249 F.3d at 164 ("A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates.").

On these facts, it appears that Plaintiff impermissibly invokes the Eighth Amendment to challenge the fact of his confinement rather than its conditions. *See Rosa v. Senkowski*, No. 97 CIV. 2468 (RWS), 1997 WL 436484, at *11 (S.D.N.Y. Aug. 1, 1997) ("The Eighth Amendment permits a convicted criminal to challenge the conditions, but not the fact, of his confinement"), *aff'd,* 148 F.3d 134 (2d Cir. 1998); *Preiser,* 411 U.S. at 499–500. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment . . . his *sole* federal remedy is a writ of habeas corpus." *Preiser*, 411 U.S. at 500. Thus, the complaint fails to state an Eighth Amendment claim related to deliberate indifference to Plaintiff's safety concerning his conditions of confinement.

### 5. *Fourteenth Amendment Claims*

Plaintiff also fails to state a "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment, but he does state a plausible Fourteenth Amendment procedural due process violation claim related to the imposition of a GPS monitoring condition on him.

First, Plaintiff's equal protection claim fails because it is insufficiently supported by the facts alleged. Plaintiff's complaint explicitly asserts that Defendants violated Plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause pursuant to 28 U.S.C. § 1983. ECF No. 1 ¶¶ 144, 147. The complaint includes one reference to a "class of one" violation of the Equal Protection Clause. *Id.* ¶ 144. "A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). But the complaint does not describe what other people may be considered similarly situated to Plaintiff for the purposes of this claim, nor does it contain any allegations that Plaintiff has been treated differently those persons. Absent any allegations supporting this claim, the Court need not determine whether *Heck* would bar it.

Second, Plaintiff's complaint can be read to allege that Defendant Caruso's actions violated his rights under the Fourteenth Amendment's Due Process Clause when she imposed a condition of GPS monitoring on him despite that, according to him, it "was not part of [his] parole condition," *see* ECF No. 1 ¶¶ 108, 121–25, 164–65. Defendants do not address this potential claim in their motion to dismiss.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty or property without due process of law. A procedural due process violation proceeds in two steps: the Court first asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State [in depriving the person of that interest] were constitutionally sufficient." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*)).

14

Plaintiff may have a limited due process liberty interest relating to the conditions of his parole. *See, e.g.*, *Singleton v. Doe*, 210 F. Supp. 3d 359, 374 (E.D.N.Y. 2016) ("[A]s a parolee, Plaintiff has a limited due process right [under the Fourteenth Amendment] that entitles him to conditions of parole that are reasonably related to his prior conduct or to the government's interest in his rehabilitation."); *Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 246 (S.D.N.Y. 2022) (holding that "parolees have some liberty interest in being free from certain special conditions of parole"). In Connecticut, the Board of Pardons and Parole may impose conditions of special parole on parolees. *See* Conn. Gen. Stat. § 54-125e(b)(2). Plaintiff may not have a liberty interest in conditions imposed by the Board of Pardons and Parolees. *See Peacock v. Malloy*, No. 3:18--CV406 (VLB), 2020 WL 3036016, at *5 n.3 (D. Conn. June 5, 2020) ("Given the discretion afforded to the Board of Pardons and Paroles under [Connecticut] statutes to set or establish conditions of parole, it is evident that a parolee has no liberty interest in the type of condition or conditions that may or may not be imposed by the Board."). But to the extent he alleges that Defendant Caruso imposed the GPS monitoring condition without approval of the Board of Pardons and Parole, he may have a plausible due process claim if the appropriate procedures for imposing such a condition were not properly followed.

As Defendants have made no argument for dismissal of such a claim, this Fourteenth Amendment claim survives dismissal.

### 6. *Personal Involvement as to Defendant Harris*

Finally, the claims against Defendant Harris must be dismissed for failure to allege personal involvement. In § 1983 actions, a plaintiff "must . . . prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). In short, "a plaintiff must plead and prove 'that each Government-official defendant, *through the official's own individual*

*actions*, has violated the Constitution.'" *Gray v. Lamont*, No. 3:21-CV-143 (VAB), 2021 WL 2037958, at *10 (D. Conn. May 21, 2021) (quoting *Tangreti*, 983 F.3d at 618) (emphasis added). Plaintiff has not alleged that Defendant Harris was personally involved in searching his residence, imposing any conditions of confinement upon him, denying him the equal protection of the laws, or denying him any process that he was due. As relevant to the claims asserted, Defendant Harris's only challenged conduct is acting as the supervisor of the other Defendant parole officers. Accordingly, all claims must be dismissed as to Defendant Harris.

### 7. *In Sum*

In summary, Plaintiff's original complaint must be dismissed except as to the Fourteenth Amendment due process claim against Defendant Caruso. All other Defendants and claims are dismissed.

## III.    MOTION TO AMEND

Next, the Court denies Plaintiff's motion for leave to amend.

### A. Legal Standard

Under the circumstances enumerated in Fed. R. Civ. P. 15(a)(1), "a plaintiff may freely amend [his] pleadings . . . as of right without court permission." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). Specifically, a plaintiff may amend his complaint once, as a matter of course, within 21 days after serving it, or within 21 days after the service of a responsive pleading or a motion to dismiss under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Outside of these enumerated circumstances, however, a plaintiff seeking to amend must either move the court for leave or obtain the opposing party's written consent. Fed. R. Civ. P. 15(a)(2).

Rule 15(a)(2) is a generally lenient standard, under which "[t]he court should freely give leave [to amend] when justice so requires." *Id.* Courts will deny a proposed amendment under Rule 15(a)(2) only "upon a showing of 'undue delay, bad faith, dilatory motive, or futility.'"

16

*Sacerdote*, 9 F.4th at 115.  An amendment is futile if it "could not withstand a motion to dismiss" under Rule 12(b)(6).  *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (citation omitted).  "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'"  *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Iqbal*, 556 U.S. at 679).  Allegations that are "legal conclusions, [or] threadbare recitals of a cause of action, supported by mere conclusory statements," will not alone be sufficient to survive a motion to dismiss.  *Balintulo*, 796 F.3d at 165 (citation omitted).  "The party opposing a motion to amend bears the burden of establishing that amendment would be futile."  *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1.

Although *pro se* litigants should ordinarily be given leave to replead, leave should be denied if "the problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it."  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

B.  The Amended Complaint

Plaintiff's proposed amended complaint names the same five Defendants as his original complaint (parole officers Desena, Caruso, Mann, Spinelli, and parole supervisor Harris), and alleges the same basic facts as his original complaint, much more succinctly.  *See* ECF No. 79 at 4–12.  He alleges the following claims, all in violation of 42 U.S.C. § 1983:  (1) Fourth Amendment violations; (2) false arrest and false detention; (3) Fourteenth Amendment due process violations, based on "fabrication of evidence & falsified paperwork"); (4) Eighth and Fourteenth Amendment conditions of confinement violations; (5) "emotional distress, reputation[al] harm, pain & suffering"; and (6) "supervisory liability" against Defendant Harris.  *Id.*  Plaintiff seeks

17

compensatory damages, punitive damages, and a declaration that Defendants violated his constitutional rights. *Id.* at 11.

## C. Discussion

None of Plaintiff's proposed causes of action in the amended complaint state a claim upon which relief can be granted, for many of the same reasons that the claims in his original complaint failed. Thus, the Court finds that the proposed amendment would be futile.

### 1. Eighth Amendment and Fourteenth Amendment Challenges to Conditions of Confinement

First, Plaintiff's proposed amended challenge to the conditions of his confinement is futile. The proposed Eighth Amendment claim is indistinguishable from the one asserted in Plaintiff's original complaint, which, as discussed above, fails to state a claim.

The amended complaint differs from the original complaint in that it adds a Fourteenth Amendment challenge to his conditions of confinement. Read broadly, the Court infers that Plaintiff intends to raise a challenge to pretrial conditions of confinement in addition to any sentence of incarceration imposed as punishment. A claim that an official acted with deliberate indifference under the Fourteenth Amendment "involves analysis of two prongs: (1) an objective prong, which requires a [plaintiff] to show that 'the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process'; and (2) a subjective or 'mens rea' prong, which requires a [plaintiff] to show that the defendant 'acted with at least deliberate indifference to the challenged conditions.'" *Abramovich v. Quiros*, No. 3:23-CV-1330 (VAB), 2024 WL 4803464, at *3 (D. Conn. Nov. 15, 2024) (quoting *Darnell*, 849 F.3d at 29). This claim, like the Eighth Amendment claim, fails because Plaintiff does not allege sufficient facts to support either of the elements. In addition, both his Eighth and Fourteenth Amendment claims appear to

18

challenge the fact of Plaintiff's confinement rather than any of its conditions, which is impermissible for the reasons set forth above.

### 2. Fourth Amendment Unreasonable Search and Seizure

Next, Plaintiff's proposed claims alleging an unreasonable search and seizure under the Fourth Amendment are also futile. While the Court cannot conclude that these procedural challenges have been waived by virtue of Plaintiff pleading guilty to the criminal narcotics charges against him, Plaintiff fails to state a claim for relief.

As an initial matter, waiver is inapplicable here. It is true that "[a] knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings," unless the defendant "specifically reserves the right to appeal" with the "approval of the court and the consent of the government." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). But federal § 1983 actions challenging the legality of a search producing inculpatory evidence are not necessarily barred by the entry of a guilty plea in the underlying criminal proceedings. *See Haring v. Prosise,* 462 U.S. 306, 311 (1983); *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). Rather, "a federal court must . . . give [the same] preclusive effect to state-court judgments" as would the courts of the state itself. *Haring*, 462 U.S. at 313; *Gregg*, 463 F.3d at 164. In Connecticut, "[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 296 (1991). Defendants have not raised the issue of collateral estoppel or made a showing that the issues before the Court have been "actually litigated," such that collateral estoppel would bar Plaintiff's Fourth Amendment claim.

Plaintiff's unreasonable search claim fails on the merits, however. The proposed amended "unreasonable search" claim is indistinguishable from the one the Court construed as raised in his

19

original complaint, and, as described above, is incapable of surviving a motion to dismiss under *Heck*.

Plaintiff's claim for false arrest and false detention, construed as being brought under the Fourth Amendment right of an individual to be free from unreasonable seizures, is likewise futile. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (indicating that a claim for false arrest arises under such right). Defendants nominally assert that this claim is barred under *Heck*. ECF No. 81 at 4 ("Here there can be no question that a finding for plaintiff on any of his alleged causes of action would necessarily call into question his criminal conviction."). But a false arrest claim "does not *inevitably* undermine a conviction, and therefore is not always barred under *Heck*." *Hagans v. Nassau Cnty. Police Dep't*, No. 18-CV-1918 (JS) (AYS), 2020 WL 1289529, at *4 (E.D.N.Y. Mar. 18, 2020); *Covington v. City of New York,* 171 F.3d 117, 123 (2d Cir. 1999) ("in a case where the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence," but a false arrest claim may survive application of *Heck* "if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest"). Here, the Court need not decide which of *Covington*'s two categories is applicable here, because the amended complaint fails to state a claim for false arrest, in any event.

"To prevail on a claim of false arrest, a plaintiff must show that (1) the defendant intentionally arrested him or her, or had him or her arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *Conroy v. Caron*, 275 F. Supp. 3d 328, 348 (D. Conn. 2017) (citation omitted). "[T]he applicable law for false arrest and false imprisonment 'is identical.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392

20

(1996)).  Plaintiff's allegation that he was arrested "when drugs were found" indicates that there was, indeed, probable cause for his arrest—regardless of the lawfulness of the search.   ECF No. 79 at 7; *Russo*, 479 F.3d at 203 ("[I]n Connecticut, a false arrest claim cannot lie when the challenged arrest was supported by probable cause"); *see Stansbury v. Wertman*, 721 F.3d 84, 91 (2d Cir. 2013) ("Evidence need not be admissible at trial in order to support a finding of probable cause.") (cleaned up; citation omitted); *see also Draper v. United States*, 358 U.S. 307, 311–12 (1959).   Accordingly, Plaintiff's false arrest and false imprisonment allegations do not state a claim as a matter of law.

### 3.   Fourteenth Amendment Due Process

Next, Plaintiff's claim that Defendants violated his due process rights by fabricating evidence and falsifying paperwork is barred by *Heck*.   Plaintiff's proposed amended complaint explicitly frames his due process argument in terms of his conviction and parole revocation:  he alleges that Defendants "falsified paperwork, fabricated evidence, and used false claims to justify an unlawful parole violation and arrest."   ECF No. 79 at 10.   Even assuming Plaintiff had sufficiently pled this constitutional claim, it triggers *Heck's* favorable-termination rule because—by its own terms—success of this claim would "necessarily imply the invalidity of the conviction." 512 U.S. at 487.  Plaintiff does not allege any injury stemming from the allegedly false paperwork or fabricated evidence, aside from his criminal and parole revocation proceedings and subsequent incarceration.  Thus, this claim is futile.

### 4.   Emotional Distress

Finally, Plaintiff's claim for infliction of emotional distress is futile.  The Court construes the complaint as raising a claim for both negligent and intentional infliction of emotional distress, under state law.

21

As an initial matter, as they do with all of Plaintiff's other proposed amended claims, Defendants nominally assert this claim is barred by *Heck*. *See* ECF No. 81 at 4–5. But the Court is not aware of, and Defendants have not raised, any examples in which the *Heck* doctrine has been applied to bar claims for negligent or intentional infliction of emotional distress. Defendants have not offered any reasons why this Court should be the first to do so.

But regardless of whether Plaintiff's "emotional distress" claim is intended to assert that Defendants acted intentionally or negligently, Plaintiff fails to state a claim upon which relief can be granted.

To state a claim for intentional infliction of emotional distress, Plaintiff must plausibly allege: "(1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Strano v. Azzinaro*, 188 Conn. App. 183, 187 (2019) (citation omitted). Here, the parole officers' challenged conduct involved an allegedly unlawful search of Plaintiff's home. This conduct is not "extreme" or "outrageous," nor are there any allegations suggesting Defendants had the requisite intent to cause Plaintiff emotional distress. *Abdella v. O'Toole*, 343 F. Supp. 2d 129, 140 (D. Conn. 2004) ("A police search, legal or not, is likely to unnerve or distress most people, but an intentional infliction of emotional distress claim requires some showing of an intent to cause emotional harm . . . There is no evidence of an intent to cause emotional harm or of actions so beyond the bounds of common decency that the court will find them legally intolerable.").

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must plausibly allege: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff

emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).  Plaintiff fails to plead an NIED claim.  None of the defendants created an *unreasonable* risk of causing Plaintiff emotional distress by searching his home.  Parole officers regularly initiate searches of parolees' residences to determine whether parole violations have occurred.  Even taking as true Plaintiff's pleadings that he suffered emotional harm as a result of the search, subsequent prosecution, and incarceration, his NIED claim fails because "the court cannot conclude that a police search involves an unreasonable risk of such distress, or that the distress alleged by plaintiffs is so severe as to cause illness or bodily harm without some proof of such harm."  *Abdella*, 343 F. Supp. 2d at 141.  Thus, Plaintiff's emotional distress claim(s) are futile.

### 5.  *Supervisory Liability*

Finally, as noted above, "supervisory liability" is not an independent cause of action, and thus is incapable of stating a claim for relief.  The Court cannot construe Plaintiff's assertion of supervisory liability broadly to raise a claim for relief: as discussed above, allegations of supervisory liability cannot alone sustain § 1983 actions.

### 6.  *Personal Involvement*

As with his original complaint, Plaintiff does not plead the personal involvement of Defendant Harris in any alleged constitutional violation.  Thus, all claims against her must be dismissed.

### 7.  *In Sum*

For the reasons described above, Plaintiff's motion for leave to amend must be denied, because all claims alleged therein are futile.

## IV.    MOTION FOR PRELIMINARY INJUNCTION

Finally, the Court denies Plaintiff's motion for a preliminary injunction.

To be eligible for preliminary injunctive relief, a plaintiff must demonstrate (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction. *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

Plaintiff's motion focuses on what he perceives to be an incorrect classification of his incarceration status within the Department of Correction. Specifically, he claims that he is being "falsely held" on a special parole violation," and thus has been incorrectly categorized as being eligible for parole when he has served 85% of his sentence, as opposed to 50% of his sentence, which has resulted in his being denied eligibility for transitional supervision status. *See, e.g.*, ECF No. 74, ¶ 106. Plaintiff seeks injunctive relief in the form of an order releasing him to transitional supervision. *Id.* ¶ 132.

The Court has already once denied the relief Plaintiff seeks. It wrote, in relevant part:

> The Court declines to issue a temporary restraining order ("TRO") with respect to this issue. Initially, as Defendants point out, the DOC, which is responsible for categorizing Plaintiff into the 50% or 85% category, is not a Defendant in this action. There are no facts to suggest that the Defendants named in this suit -- who are all parole officers or supervisors -- have any power or control over risk reduction earned credit or Plaintiff's release to parole or transitional supervision. Plaintiff acknowledges as much by suggesting that DOC is acting as Defendants' "counterpart" in taking the allegedly harmful actions. But aside from this conclusory allegation, Plaintiff fails to allege facts to suggest that any named Defendant is acting in "active concert or participation" with the DOC, such that the Court could impose injunctive relief on DOC. *See* Fed. R. Civ. P. 65(d). In any event, the DOC is not a "person" and thus cannot be sued under 42 U.S.C. § 1983. *Holley v. Middletown Police Dep't*, No. 3:20-CV-1664 (SRU), 2021 WL 2413398, at *4 (D. Conn. June 14, 2021).

24

*See* Order, ECF No. 73.  The Court also concluded that Plaintiff's request for relief was speculative because he had not established that the date by which he would be eligible for transitional supervision had passed.  *Id.*

Plaintiff's renewed motion must likewise be denied.  Although the Court did not previously reach this ground, what Plaintiff seeks is, effectively, release from custody, which is relief that may be sought only through a petition for a writ of habeas corpus.  *See Preiser*, 411 U.S. at 487–90.  Additionally, the Court's previous rationale that the Defendants in this action are not responsible for Plaintiff's classification with the Department of Correction again justifies denial. Finally, as Plaintiff asserts no claim in either his original complaint or his amended complaint related to the issue of his classification within the Department of Correction, the injunctive relief that he seeks is not related to his allegations and thus cannot be granted.  *See Scarbrough v. Evans*, No. 9:09-CV-850 (NAM) (DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (collecting cases).[9]

## V.    CONCLUSION

For the reasons described herein, Plaintiff's original complaint is DISMISSED except as to his claim of a Fourteenth Amendment due process violation against Defendant Caruso related to imposition of a GPS monitoring condition as a special parole condition.  Plaintiff's motions for leave to amend and for preliminary injunctive relief are DENIED.

The Clerk is directed to terminate all Defendants except Defendant Leigh'ann Caruso.  The Court had previously stayed discovery, pending resolution of the motion to dismiss.  As that motion has now been resolved and one claim will proceed, the parties' Rule 26(f) report shall be

---

[9] The Court notes that Plaintiff has filed a separate action related to his alleged misclassification, which is pending before the undersigned.  *See Pennyman v. Caruso et al.*, No. 3:26-CV-00147 (SVN).

due on **April 30, 2026.**  As Plaintiff is incarcerated and proceeding *pro se*, defense counsel shall

initiate the Rule 26(f) conferral process.

SO ORDERED at Hartford, Connecticut, this 31st day of March, 2026.


                                          */s/ Sarala V. Nagala*
                                          SARALA V. NAGALA
                                          UNITED STATES DISTRICT JUDGE

26